J-S18041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUDITH A. VACULA | : | |
| | : | |
| Appellant | : | No. 1604 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 8, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000475-2021

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:               **FILED AUGUST 08, 2022**

Judith Vacula (Appellant) appeals from the judgment of sentence entered in the Schuylkill County Court of Common Pleas following her jury convictions of one count of criminal trespass, and two counts of defiant trespass (actual communication and posted).[1]  Appellant's convictions stem from her presence at a property that she was renting.  On appeal, Appellant challenges the sufficiency of the evidence with respect to these convictions, namely that she never received personal service of a notice of condemnation and a notice to vacate the building at issue and therefore, her actions did not amount to an unlawful entry.  Upon review, we affirm.

_____

[1] ***See*** 18 Pa.C.S. §§ 3503(a)(1)(i), 3503(b)(1)(i), (ii).

In early 2021, Appellant first contacted the Tamaqua Borough Code Enforcement Officer George Kurtz explaining that she was a tenant at 237 East Broad Street, Tamaqua, Pennsylvania ("the Property") and wanted to turn the building into a single-family dwelling. *See* Trial Ct. Op., 12/30/21, at 2. Appellant also told him that it was most recently used as a retirement facility. *See id.* After pulling the property file, Officer Kurtz discovered the Property had previously been used as a funeral home, but "found no permits on file to convert the zoning to [a] single family dwelling or to convert the property into a retirement facility." *Id.* Officer Kurtz explained that the retirement facility was not a legal use because there were no permits issued for that change of use. *See* N.T. Trial, 10/25/21, at 25. Appellant then applied for a permit to restore the electricity in the building in order to begin the renovation process. *Id.* at 26.

Thereafter, Officer Kurtz issued a Pennsylvania United Construction Code construction permit ("Permit") on December 30, 2020, in the name of the property owner, not Appellant.[2] *See* N.T. Trial at 26, 45. The Permit was valid until June 30, 2021. *Id.* at 46. Officer Kurtz scheduled an inspection of the electric service because Pennsylvania Power and Light ("PPL"), the local power company, required a certified inspection of a building's electrical service

_____

[2] Officer Kurtz indicated it was "very common for a third party to request a permit as the agent of the owner." Trial Ct. Op. at 2.

before restoring power where electricity has been off for more than one year. *See* Trial Ct. Op. at 2. However, the "inspection failed and the power could not be turned on." *See id.* Moreover, the inspection revealed the electrical system was not safe to reenergize, and the Property did not have running water. *See id.* As a result, Officer Kurtz condemned the building on behalf of the borough. *See id.* He noted that in order to condemn a building, the borough adopted the 2009 International Property Maintenance Code ("IPMC"), which outlined "the conditions for a building to be considered uninhabitable." N.T. Trial at 24.

On January 6, 2021, Officer Kurtz signed and posted the first condemnation notice placard on the Property, which showed "that the structure [was] unfit for human occupancy due to lack of heat, water, and electricity for unsanitary conditions." N.T. Trial at 30; *see also* Trial Ct. Op. at 3. The condemnation notice provided it was illegal for anyone to enter the Property without authorization from a Tamaqua Borough Building Code official. *Id.* The condemnation notice also stated the following:

> Vacate the property immediately. Structure is ordered to be closed up secured. Failure to do so within 24 hours shall result in the code official causing the premise to be closed and secured in accordance with Section 108.2 of the 2009 IPMC.
>
> Notify me at the number below after water and electrical service has been restored to schedule an inspection and to arrange for the removal of the condemnation placard.

N.T. Trial at 49. The IMPC set forth the method of service for the condemnation notice to be provided to the property owner, which Officer Kurtz

- 3 -

recited as follows: "Deliver – deliver personally; sent by certified mail and first-class mail to the last known address; or if the notice is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure by such notice." *Id.* at 51.

Officer Kurtz indicated that a person may still enter a condemned property by filling out a form and submitting it to the Tamaqua Borough Building Code Office ("the Office"). N.T. Trial at 55. He stated that the applicant must provide the Office with copies of the applicant's identification and of the property owner's identification and signature. *Id.* at 56. Officer Kurtz noted Appellant never submitted the form. *Id.*

Also on January 6, 2021, Officer Kurtz issued a notice of order to vacate, which stated what the property owner needed to do to remove the condemnation declaration. *See* N.T. Trial at 33-34. He indicated that the notice to vacate was posted[3] at the Property on that day. *Id.* at 34. The notice explained "that occupancy of the structure ha[d] been prohibited and that the property must be vacated immediately and the structure must be closed up and secured." Trial Ct. Op. at 3. Officer Kurtz indicated the notice to vacate

---

[3] Officer Kurtz stated a notice to vacate is generally "post[ed] . . . directly on the building" and "mail[ed] . . . to the property owner." N.T. Trial at 34.

was not a final order and it stated how a person could appeal such a determination. *See* N.T. Trial at 48.[4]

Within two days of posting the documents, Officer Kurtz observed that someone had removed the placard and notice, and he had to replace them several times, including on January 8, 2021. *See id.* Trial Ct. Op. at 3; *see also* N.T. Trial at 32.

> No action was taken to remedy the issues with the [P]roperty, and on February 3, 2021[,] the [P]roperty was condemned.
>
> During this time period, [Officer] Kurtz spoke with [Appellant] and told her that she was not allowed to enter the property. . . . [Officer] Kurtz left a voicemail on [Appellant]'s telephone telling her that the property was condemned. [Officer] Kurtz spoke to [Appellant] numerous times during this time period.

Trial Ct. Op. at 3.

---

[4] The notice provided:

> Application for appeal, any person directly affected by a decision of the code official or a notice or order issued under this code relating to a condemnation under Section 108 . . . shall have the right to appeal to the Board of Appeals, provided that a written application for appeal is filed with the borough secretary within 20 days after the day the decision, notice or order was served.
>
> An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means.

N.T. Trial at 48-49.

On February 3, 2021, Corporal Thomas Rodgers of the Tamaqua Borough Police "receive notice that [Appellant] intended to go to the 237 East Broad Street property on that day and be willingly arrested." Trial Ct. Op. at 4-5.

> It was cold and there was snow upon the ground. Corporal Rodgers and several other officers arrived at 237 East Broad Street and observed [Appellant] sitting in the driver's seat of a vehicle parked in the driveway holding a sign indicating that she planned to be arrested and to invoke her right to silence. The officers walked around the property and observed footprints in the snow leading to a locked door and snow cleared away from the doorway. They observed snowy footprints inside the door. They observed that the door had been opened. The footprints led to the driveway, to approximately three feet in front of the vehicle. They removed [Appellant] from the vehicle and arrested her. The police observed that there were at least three condemnation signs posted on the property at the time. [Officer] Kurtz . . . did not observe [Appellant] inside the building.
>
> Next, Officer Michael Weaver . . . went to 237 East Broad Street after receiving notice that [Appellant] had called the police station and said that she was at the 237 East Broad Street property waiting to be arrested. When he arrived, [Appellant] was sitting inside a vehicle parked on the property. There were footprints in the snow leading to the back of the property, where snow had been cleared from a doorway. There were footprints inside the door. [Appellant] was taken into custody. There were condemnation signs posted on the building's doors. . . . Officer Weaver admitted that he did not see [Appellant] inside of the building.

*Id*. at 5. Additionally, Officer Weaver found condemnation postings that were previously posted on the Property on January 6, 2021, in the Appellant's car. *See* N.T. Trial at 70.

Appellant was charged with multiple offenses related to the incident. The matter proceeded to a one-day jury trial, which was held on October 25,

2021. The Commonwealth presented several witnesses, including Officer Kurtz, and the responding police officers.

> At the close of the Commonwealth's case, counsel for [Appellant] made a series of motions. First, he asked that the case be dismissed due to lack of evidence of the Tamaqua ordinance on which the case was premised. Second, he moved to dismiss the case based on the failure of the Commonwealth to prove that [Appellant] had been served with notice to vacate and of the condemnation by certified mail. Counsel argued that because there was no proof of service, [her] appellate rights were never triggered.

Trial Ct. Op. at 6. The Commonwealth asserted that Appellant's charges stemmed from her violating the condemnation notice and that Officer Kurtz had no obligation to serve her such notice because she was not the property owner, rather she was "a mere tenant." *Id.* The trial court agreed with the Commonwealth, "and found that [Appellant] had sufficient notice by way of the posting that she was not permitted to enter the building." *Id.* Additionally, the court "concluded that the ordinance as enacted is presumed valid, . . . [and] it was not the basis for this criminal action. *Id.* The trial court then denied both motions. *See id.* During her case-in-chief, Appellant did not testify or present any witnesses. As noted above, at the conclusion of the trial, the jury found Appellant guilty of criminal trespass, defiant trespass (actual communication), and defiant trespass (posted).

On December 8, 2021, the trial court sentenced Appellant to serve a term of not less than 1 month nor more than 23 months of confinement in county prison for the criminal trespass conviction, as well as 75 hours of

community service and court costs, fines, and fees. *See* Order of Court, 12/8/21. The court did not impose further penalty regarding the remaining claims because they merged for sentencing purposes. *See id*.

Two days later, Appellant filed a timely notice of appeal. The trial court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). *See* Order of Court, 12/31/21. Notably, the trial court issued its Pa.R.A.P. 1925(a) opinion[5] before Appellant was required to file a concise statement on January 4, 2022, because the presiding judge was retiring from the bench on January 3, 2022. *See* Trial Ct. Op. at 1. Appellant did file a concise statement on January 4, 2022.

Appellant raises the following issue on appeal:

Whether the evidence was insufficient to sustain the jury's guilty verdict for Criminal Trespass, Defiant Trespass (Actual Communication)[,] and Defiant Trespass (Posted) in that the Borough Code Enforcement Officer testified that personal service upon Appellant was never achieved as prohibition from residence as to Notice to Vacate and Notice of Condemnation as well as the fact building permit was never revoked[?]

Appellant's Brief at 3.

When reviewing a challenge to the sufficiency of the evidence,

our standard of review . . . requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime

---

[5] As will be discussed below, in its opinion, the trial court addressed the sufficiency of the evidence with respect to all of Appellant's convictions.

charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Windslowe*, 158 A.3d 698, 708-09 (Pa. Super. 2017) (citation omitted).

In her sole issue on appeal, Appellant contends that as a result of Officer Kurtz's failure to serve her with the notice to vacate and notice of condemnation, and since her Permit was still valid and unrevoked, the evidence was insufficient to uphold her trespass convictions under 18 Pa.C.S. § 3503. *See* Appellant's Brief at 7-8. Regarding criminal trespass, she states: "As applied to the instant case, in order to sustain a conviction for criminal trespass, the Commonwealth must demonstrate and prove beyond a reasonable doubt . . . evidence and intent of entry by subterfuge." *Id.* at 9 (citation omitted). Appellant alleges that Officer Kurtz failed to serve her the notices *via* certified mail, mail, or personal service as required by the IPMC

but "merely" relied on posting the notices at the Property and "verbally relating certain matters" to her. *Id.* at 12. Appellant maintains that

> [the] Commonwealth [posited] its entire case on the basis that Appellant was barred from entering residence by order of code official, thence Appellant['s] entry in [the] face of said orders constituted criminal trespass and defiant trespass. In that [Officer] Kurtz never achieved original process of service, Commonwealth cannot base its entire case upon a purported flaunting of code officer order.

*Id.* at 13. Therefore, Appellant claims "she never entered the building under subterfuge in that said real estate constituted a primary residence, and Appellant still possessed an unrevoked and valid permit. *Id.*

> With respect to defiant trespass, Appellant argues:
>
> [The] Commonwealth failed to prove its case . . . in that an intent to enter [the] premises while not privileged must be demonstrated, and, the fact remains, that Appellant **was never properly served** as an aggrieved party to the notice to vacate or notice of condemnation, thereby depriving her rights of [a]ppeal to said order as well as subjecting Appellant regarding any unlawful entry.

*Id.* at 13-14 (emphasis added).

Appellant was convicted of committing both criminal trespass and defiant trespass as set forth in Section 3503.[6] Section 3503 provides, in relevant part:

**(a) *Buildings and occupied structures.***

---

[6] "The crime of defiant trespass is defined as a subspecies of criminal trespass." ***Commonwealth v. Namack***, 663 A.2d 191, 193 (Pa. Super. 1995).

**(1)** A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

**(i)** enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]

\* \* \*

**(b)** *Defiant trespasser.*

**(1)** A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

**(i)** actual communication to the actor;

**(ii)** posting in a manner prescribed by law or reasonably likely to come to the attention of intruders[.]

18 Pa.C.S. § 3503.

In finding there was sufficient evidence to support Appellant's convictions, the trial court first addressed criminal trespass, opining:

The evidence overwhelmingly demonstrated that [Appellant] saw the condemnation notice and notice to vacate and discussed it multiple times with then-code enforcement officer Kurtz, including leaving recorded messages. **The Commonwealth did not need to prove that she received certified mail of these notices as that is not required by 18 Pa.C.S. § 3503 as an element of the crime. Likewise, the Commonwealth did not need to introduce evidence of the ordinance permitting condemnation as that is also not an element of the crime.** The Commonwealth need only prove that [Appellant] knew she was not to be in a building, and went inside anyway. The evidence also showed that on the day in question, [Appellant] contacted the police, told them she was going to enter into [the Property], and that she would wait for them and consent to be arrested for the crime. The police arrived, observed her in a vehicle, observed footprints in the snow leading from near the vehicle to a back door, observed the door having been opened and observed

- 11 -

footprints inside. The jury believed the officers' testimony that [Appellant] had gone into the building.

Trial Ct. Op. at 9 (emphasis added).

As for defiant trespass, the court found:

[Appellant] knew she was to vacate the [P]roperty because it had been condemned, that she was not permitted to be there, and that she was verbally told this and that she had observed the postings on the building. There was evidence that she defied the order which had been communicated by an authorized person as described by the several police officers who were at the scene. She also contacted the police in advance and told them what she [was] going to do.

Trial Ct. Op. at 10.

We agree with the trial court's determination that the Appellant's sufficiency claim has no merit. We note that much of Appellant's argument as to both criminal and defiant trespass concerned the fact that she never received the notices *via* certified mail, mail, or personal service. However, as the trial court points out, the requirement of service is not an element of the trespass crime. Moreover, under the IPMC, notice need only be given to the property owner, not a tenant like Appellant. **See** N.T. Trial at 51. Thus, Appellant's sufficiency challenge does not actually implicate any of the elements of the crimes set forth in Section 3503.[7]

In any event, the evidence presented by the Commonwealth at trial was sufficient to support Appellant's convictions, including Officer Kurtz's

---

[7] Most notably, Appellant does **not** allege that she never entered the property.

testimony, which established Appellant knew she had to vacate the condemned property, "that she was not permitted to be there, and that she was verbally told this[,] and that she had observed the postings on the building." Trial Ct. Op. at 10.

Additionally, Corporal Thomas Rodgers stated that on the day of Appellant's arrest, there were multiple condemnation signs posted around the property, on the windows and doors. *See* N.T. Trial at 65. He testified that Appellant contacted police, claiming that she intended to go to the Property on that day and was willing to be arrested. *Id.* at 62. He also testified that he observed footprints leading from Appellant's car to the back entrance and a few feet inside the Property, from which the jury could reasonably infer that Appellant had entered the Property. *Id.* at 64. Likewise, Officer Weaver testified he found the condemnation postings in Appellant's car. *Id.* at 70. While Officer Weaver did not see Appellant inside the building, he also observed the footprints in and near the building. *Id.* at 64. The jury found both officers to be credible and based on the convictions, surmised that Appellant did indeed go inside the residence. *See Windslowe*, 158 A.3d at 709. As such, the Commonwealth presented sufficient, circumstantial evidence that Appellant entered the Property knowing she was not licensed or privileged to do so. *See* 18. Pa.C.S. §3503. For the reasons discussed above, we conclude no relief is due. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/8/2022